James G. Carr Sr., U.S. District Judge
Plaintiff Design Basics (DB), the creator and owner of architectural designs for homes, sued defendants Forrester Wehrle Homes, Inc., and Wehrle Development, Ltd., alleging that the defendants used many of DB's designs without permission.
After protracted proceedings and a status conference on April 30, 2017, the Clerk's Office on the following day entered, as I had neglected to prepare a formal order, a minute order that, in pertinent part, stated:
Plaintiff to make a reasonable, good-faith demand of defendants forthwith; defendants to make a reasonable, good-faith response no later than one week after receipt of plaintiff's demand. Parties to undertake forthwith to schedule private mediation conference.
On June 13, 2018, counsel for plaintiff, defendants, and defendants' three insurers, Cincinnati Insurance Company, Acuity Insurance Company, and Frankenmuth Insurance Company, participated in a mediation. The Hon. Gerald R. Rosen, retired former Chief Judge of the U.S. District Court for the Eastern District of Michigan, conducted the mediation, which lasted most of the day.
Late that afternoon, Judge Rosen informed me that the mediation would not be successful. He also told me that, in his view, Cincinnati Insurance Company had failed to comply with Local Rule 16.6(f), which requires in pertinent part (emphasis supplied):
The parties shall also be present, except that when a party is other than an individual or when a party's interests are being represented by an insurance company, an authorized representative of such party or insurance company, with full authority to settle , shall attend. Willful failure of a party to attend the mediation conference shall be reported by the Mediator to the ADR Administrator for transmittal to the assigned Judge, who may impose appropriate sanctions.
According to Judge Rosen, the adjuster from Cincinnati Insurance Company had come with substantially insufficient authority to negotiate and possibly settle the case. I accompanied Judge Rosen to the courtroom. I made clear my strongly felt disappointment with Cincinnati's failure to send a representative with substantially *724 more authority to negotiate and settle.[1] Simply put, it had sent an apparently low-level adjuster with only modest and clearly insufficient authority and discretion to engage in meaningful negotiations, let alone to accomplish a settlement.
That being in my view so, I ordered Cincinnati to show cause why it should not pay all fees and costs - including Judge Rosen's fee - that the other parties had incurred in connection with the mediation. Cincinnati has responded to that order (Doc. 141), DB has responded to its response (Doc. 143), and Cincinnati has replied (Doc. 144).
For the reasons that follow, I conclude that, among Cincinnati's manifold contentions, the one that matters and is dispositive is that it did not have due and sufficient notice of what was expected of it and its participation during the mediation. Therefore, I withdraw the order to show cause and deny DB's request for reimbursement of its fees and costs.
Discussion
The linchpin of the show-cause order was my understanding of Judge Rosen's expectations - as was customary in proceedings before him as a District Judge - that the directive, "full authority to settle," in our Local Rule meant "with authority to meet the plaintiff's last demand."
Local Rule 16.6(f) does not define the term, "full authority to settle." Nor could I find a definition of that term in either case law or academic writing. It has not been my expectation that a party's representative would have authority to pay the plaintiff's last demand (or to accept the defendant's last offer). Such unlimited - in every sense of the word - authority seems to me to be, at least in many instances, unattainable.
On the other hand, Cincinnati can, with some degree of plausibility, argue that its representative had "full authority to settle:" i.e. , he could have paid anything up to the (in my view unreasonably low) limit, which was, in fact, as much as anyone at Cincinnati was willing to pay. If DB came all the way down to that figure, he had full authority to accept its offer.
Though I understand that argument, it neglects the core function of a settlement/mediation conference: jointly and in good faith to negotiate away from each party's past positions toward a point where the parties can meet agreeably. They may never get there, but the ability to take some reasonable, albeit unwelcome steps in that direction is typically the sine qua non of any negotiation
Coming to the session with a fixed, firm, and unalterable position defeats the session's purpose. Moreover, it renders useless the role of the judge or mediator, whose function is to provide, as candidly as possible, his or her own assessment of the relative strengths and weaknesses of each party's case and possible outcomes at later stages, were they to occur.
To be sure, the judge or mediator must him- or herself be flexible, altering his or her own assessment of possible outcomes as his or her understanding evolves during the give and take of the session. Having the least at stake, and duty-bound to be impartial, the judge or mediator can, more than anyone else, contribute an untainted and untinted view of the case and the span of possibilities.
Unwillingness to reassess, reevaluate, reconsider, and recalibrate how much to *725 pay or accept in light of the judge's or mediator's views unavoidably and inevitably renders any settlement/mediation session barren, fruitless, and wasteful. Which the mediation giving rise to the show-cause order directed at Cincinnati was destined and doomed to be from its outset.
In my view, "full authority to settle" means that the representative has complete discretion, which he or she can exercise independently during the settlement/mediation session, to spend as much, or take as little, as seems, in light of the judge's or mediator's views and the representative's own evolving assessment , best for those whom he or she represents.
But that was not Cincinnati's understanding of what "full authority to settle" meant at the mediation. Nor, clearly, was it aware of Judge Rosen's understanding. And certainly none of the other participants could have divined or intuited the formulation I have developed and set forth here.[2]
That being so, Cincinnati had no meaningful, relatable, or fair notice of the risk it was assuming in how it interpreted its obligations to Judge Rosen and the other participants. That Cincinnati's interpretation - to send someone firmly authorized to offer on his own no more than a predictably unacceptable amount to DB - was unacceptable and mistaken is not the point.
The point is that Cincinnati, under all the circumstances, could not reasonably anticipate that its actions would expose it to the sanction and expense the show-cause order poses and DB understandably seeks. Notice matters; that Cincinnati did not have fair notice is what matters most of all.
Accordingly, it is hereby
ORDERED THAT the previously issued show-cause order be, and the same hereby is, withdrawn, and the request of Design Basics for reimbursement of its fees and costs, including its portion of the mediator's fee, be, and the same hereby is, denied.
So ordered.

In a subsequent phone call the Cincinnati representative confirmed the limits of his authority and absolute inability to negotiate beyond those limits without one or possibly two levels of phone calls to obtain more authority.

That does not mean that every judicially- or mediator-supervised settlement effort can or will succeed. Some don't, regardless of the parties' best, good-faith efforts or what the judge or mediator, with the fullest possible knowledge and insight, thinks and expresses to the parties. What matters is that, giving heed to what the judge or mediator says, the parties and representatives come to the session willing to try in good faith to settle. No representative who comes only with authority to pay or accept the last offer or demand is necessarily incapable of making that effort.